**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARGARITA SANTIAGO and HECTOR SANTIAGO,<br><br>Plaintiffs,<br><br>v.<br><br>BOSTON SCIENTIFIC CORPORATION,<br><br>Defendant. | Case No. 2:21-cv-11696 (JKS) (SDA)<br><br>**OPINION AND ORDER BARRING PLAINTIFFS' ECONOMIC EXPERT, ANDREW VERZILLI**<br><br>August 31, 2026 |

**STACEY D. ADAMS**, United States Magistrate Judge.

**THIS MATTER** comes before the Court by way of Order to Show Cause to consider whether the economic expert of Plaintiffs Margarita Santiago ("Mrs. Santiago") and Hector Santiago ("Mr. Santiago") (together "Plaintiffs"), Andrew Verzilli ("Verzilli"), should be barred as a result of Plaintiffs' ongoing failure to facilitate production of Mrs. Santiago's tax returns (ECF No. 116), and the Court having heard oral argument on June 16, 2026, and for good cause shown:

**WHEREAS,** on May 24, 2021, Plaintiffs filed the initial Complaint alleging various injuries as a result of Mrs. Santiago's implantation of an Obtryx Transobturator Mid-Urethral Sling System manufactured by Defendant Boston Scientific Corporation ("Defendant"). (ECF No. 1). On November 11, 2021, Plaintiffs filed an Amended Complaint. (ECF No. 7). Mrs. Santiago alleges, among other damages, that she suffered financial or economic loss, including, but not limited to obligations for medical services and expenses, and/or lost income. (ECF No. 7 ¶¶ 58, 61, 65, 69, 77).

**WHEREAS,** on November 12, 2021, Defendant filed an Answer. (ECF No. 8).

**WHEREAS,** an Initial Pretrial Scheduling Order was issued on February 7, 2022 (ECF No. 13), after which the parties commenced discovery.

**WHEREAS,** over the course of discovery, the parties had many disputes and the discovery deadlines were extended over eight times. (ECF Nos. 18, 26, 40, 43, 59, 63, 72, 76).

**WHEREAS,** on August 16, 2024, the parties filed a joint status letter wherein Defendant complained that Plaintiffs served the report of their wage-loss expert, Verzilli, eleven (11) days after the already much-extended Court-Ordered deadline of July 15, 2024 and requested the report be stricken. (ECF No. 83).

**WHEREAS,** on August 20, 2024 the Court denied Defendant's request to bar Verzilli's expert report, but afforded Defendant additional time to provide a responsive report. (ECF No. 85). In order to prepare a rebuttal economic expert report, Defendant properly requested certain financial information from Plaintiffs directly related to Mrs. Santiago's wage-loss claim, including tax returns and documentation concerning her two social security disability ("SSD") claims, one in 2020 and one in 2023. Accordingly, while the Court allowed Plaintiffs' late economic expert report, it simultaneously required Mrs. Santiago to produce: (i) a copy of all documents relied upon or provided to Verzilli by August 23, 2024; (ii) a copy all documents concerning her two SSD claims by August 30, 2024; and (ii) signed authorizations for social security records from the Social Security Administration ("SSA") by August 30, 2024. (*Id.*).

**WHEREAS,** on September 26, 2024, Defendant submitted a letter to the Court requesting additional time to serve its rebuttal economic expert report because Mrs. Santiago had not complied with the Court's amended scheduling order. (ECF No. 90). As an initial matter, Plaintiffs produced the documents they had purportedly provided to Verzilli eighteen (18) days after the Court-Ordered deadline. (*Id.*). Putting aside their tardiness, the bigger issue was that the materials

produced to Defendant were either incomplete or illegible. (*Id.*). Specifically, the tax returns for 2018 and 2019 were illegible and not in a proper format, the 2019 tax return was missing the associated schedules, a W-2 for 2019 was not provided, and the W-2 for 2020 was illegible. (*Id.*). Plaintiffs also missed the August 30, 2024 deadline to produce documentation relating to Mrs. Santiago's two SSD claims and, when the documentation was finally produced, there were no documents related to her 2023 claim and only one page of a single document from the SSA related to her 2020 claim. (*Id.*). In short, Plaintiffs' production was untimely, incomplete and insufficient.

**WHEREAS,** before involving the Court, Defendant raised the issue with Plaintiffs via letter dated September 19, 2024, and also requested Plaintiffs provide Tax Returns for the years 2014-2017 and 2021-2023 (which Defendant's expert deemed relevant to any economic loss claim).

**WHEREAS,** on October 4, 2024, Plaintiffs filed a responsive letter consenting to Defendant's request for an extension to serve its rebuttal report. (ECF No. 93). Additionally, they claimed that were trying to coordinate with Mrs. Santiago's SSD attorney to obtain the requested documents. (*Id.*). Plaintiffs provided the contact information of the SSD attorney so that Defendant could subpoena the necessary records. (*Id.*). Plaintiffs also represented that they had since signed SSA authorizations and provided legible tax returns to Defendant. (*Id.*).

**WHEREAS,** at a status conference conducted on the record on October 9, 2024, Defendant renewed its request to strike Verzilli's report because (i) Plaintiffs had still not produced all of the documents they provided to Verzilli; (ii) Plaintiffs had not produced a legible copy of the 2018 tax return; (iii) Mrs. Santiago had not produced her 2020 W-2; (iv) it was unclear whether Mrs. Santiago's 2019 W-2 was complete; (v) Plaintiffs had not yet produced tax returns from 2014-2017 or 2021-2023; (vi) the SSA authorization was not provided until October 4, 2024 (more than

one month after the Court-Ordered deadline); (vii) Mrs. Santiago had only produced incomplete documentation concerning her 2020 SSD claim; and (viii) Mrs. Santiago had produced no documentation concerning her 2023 SSD claim. Rather than striking Verzilli's expert report, the Court Ordered Plaintiffs to submit signed authorizations for the release of Mrs. Santiago's 2014-2023 tax returns from the Internal Revenue Service ("IRS") by October 23, 2024. The Court specifically advised Plaintiff that if she failed to comply with these deadlines her economic expert would be barred. The Court further extended the deadlines for expert discovery until November 30, 2024, with the exception of Plaintiffs' economic expert (which would be held in abeyance until the transcripts were received and Defendant was able to complete its rebuttal report).

**WHEREAS,** on November 18, 2024, Defendant filed a letter requesting an extension of the deadline to complete expert depositions because both the tax returns and SSD records had yet to be received. (ECF No. 98).

**WHEREAS,** at the December 6, 2024 status conference, the Court learned that Plaintiffs had not timely completed their depositions of Defendant's experts. The Court issued an Amended Scheduling Order again extending the deadline to complete expert depositions until February 7, 2025, but noted this deadline had now been extended eleven (11) times, would not be extended again, and that any depositions not completed by February 7, 2025 would result in the deposition being barred. (ECF No. 99). Additionally, Defendant was directed to notify the Court upon receipt of the tax records from the IRS and the SSD documents, at which time the Court would set a deadline for the completion of Defendant's rebuttal economic expert report. (*Id.*).

**WHEREAS,** as of a February 21, 2025 status conference, the parties reported that all fact and expert discovery was complete with the exception of Defendant's economic expert report and economic expert depositions, which could not be completed because the parties were still awaiting

records from the SSA and IRS. (ECF No. 100). At the time, the Court attributed the delay to the government agencies, and not to the fault of either party. (*Id.*). The Court continued the matter for an additional 60 days to allow more time to receive the documents, and directed the parties to notify the Court within 48 hours of receipt of the documents so that a schedule could be set for the remaining expert discovery. (*Id.*).

**WHEREAS,** the parties submitted a joint status update on April 30, 2025 advising that the SSD documents had finally been received, but the parties were still awaiting responses from the IRS. (ECF No. 101). Since Plaintiffs' attempt to obtain the tax returns had been apparently unsuccessful, Defendant requested that Plaintiffs provide it with the necessary IRS authorization so that Defendant's vendor could try to directly obtain the documents from the IRS. (*Id.*).

**WHEREAS,** on May 6, 2025, the Court Ordered Plaintiffs to provide signed IRS authorizations to Defendant by May 26, 2025 and directed the parties to provide another update in 60 days. (ECF No. 102).

**WHEREAS,** additional continuances were granted by the Court until October 10, 2025 (ECF No. 104), December 15, 2025 (ECF No. 106) and February 15, 2026 (ECF No. 108) as the parties continued to await documents from the IRS. By December 15, 2025, Plaintiffs' original authorization had expired, and Defendant requested an updated executed authorization. (ECF No. 109). Befuddled as to why the IRS still had yet to produce documents, Defendant also asked Plaintiffs to produce any correspondence from the IRS explaining why the documents had not been produced. (*Id.*). Defendant received no response from Plaintiffs. (*Id.*).

**WHEREAS,** on January 29, 2026, the Court directed Plaintiffs to provide Defendant with an updated executed IRS authorization and any correspondence received from the IRS by February 4, 2026, and noted that Plaintiffs would be subject to sanctions in the amount of $50 per day until

the referenced authorization and documents were provided. (*Id.*). The Court's Order noted:

> [t]here is simply no excuse for the ongoing delay in Plaintiffs' response to these very straight-forward requests from defense counsel, particularly in light of the extensive delays obtaining records from the IRS.

(*Id.*).

**WHEREAS,** on February 17, 2026, the parties submitted a joint status report advising that Plaintiffs did not provide Defendant with the updated executed authorization until February 10, 2026 – six (6) days after the Court's deadline – and it was missing a handwritten signature. (ECF No. 111). The Court granted another 90-day continuance while the parties awaited the records from the IRS in response to the updated authorization. (ECF No. 112). Plaintiffs were Ordered to produce any new correspondence received from the IRS within 14 days of receipt. (*Id.*).

**WHEREAS,** on May 27, 2026, parties submitted a joint status report advising that, upon receipt of Mrs. Santiago's updated executed IRS authorization, Defendant's vendor promptly submitted it to the IRS. (ECF No. 113). Defendant's vendor advised that the IRS returned the funds submitted with the request without explanation. (*Id.*). The Court Ordered the parties to meet and confer and submit a letter by June 5, 2026, advising: (i) whether Plaintiffs received any documentation from the IRS; and (ii) if not, whether the IRS sent Plaintiffs an explanatory letter explaining why the request was denied. (ECF No. 114).

**WHEREAS,** on June 5, 2026, Defendant submitted a status letter advising that Plaintiffs' counsel failed to meet and confer. (ECF No. 115). The Court then issued an Order to Show Cause directing Plaintiffs and their counsel to appear and show cause on June 16, 2026 as to why Verzilli's expert report should not be barred as a result of Plaintiffs' ongoing failure to facilitate the production of Mrs. Santiago's tax returns. (ECF No. 116). The Court noted that this issue first surfaced when Plaintiffs served Verzilli's expert report late, was exacerbated by Plaintiffs'

production of incomplete or illegible financial documents resulting in the need for authorizations to obtain the information directly from the SSA and IRS, and the issue was then further compounded by Plaintiffs' delay in providing properly executed authorizations. (*Id.*). In its Order, the Court noted:

> This has been going on since August 2024, far too long. It is Plaintiff's responsibility to obtain and produce her own tax returns so that Defendant has a fair opportunity to prepare a rebuttal report. This is basic information that Plaintiff can easily obtain and the delay is inexcusable. The Court frankly questions how Plaintiff's own expert was able to prepare a report without this information. This issue is compounded by the constant lack of responsiveness from Plaintiff on this issue - frequently necessitating Court intervention over the past two years.

(*Id.*).

The Order afforded Plaintiffs the opportunity to submit a written response prior to appearing, which Plaintiffs failed to do.

**WHEREAS,** on June 16, 2026, Plaintiffs' counsel appeared before the Court without her clients, contrary to the Court's Order.

**WHEREAS,** at the hearing, Defense counsel stressed their repeated attempts to confer with Plaintiffs' counsel, and the lack of response. (ECF No. 115). It was shared that Plaintiffs' counsel finally produced tax transcripts at 3:45 p.m. the day before the hearing, but they were incomplete and there were discrepancies between the information contained in the tax transcripts and what was reported in Verzilli's report.

**WHEREAS,** under Rule 37(c)(1), "[i]f a party fails to provide information…as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "It follows that a court has the discretion to bar expert testimony that is

not proffered in accordance with Rule 26, unless the noncompliance is excused." *Dzielak v. Whirlpool Corp.*, No. 12-cv-0089 (KM)(JBC), 2017 WL 1034197, at *29 (D.N.J. Mar. 17, 2017) (citing *Geis v. Tricam Indus., Inc.*, No. 09-cv-1396 (MLC), 2010 WL 8591142, at *2 (D.N.J. Oct. 6, 2010)).

**WHEREAS,** the Third Circuit has continued to apply *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894 (3d Cir. 1977), in analyzing sanctions under Rule 37. "[T]he exclusion of critical evidence is an 'extreme' sanction, . . . not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Id.* at 905 (quoting *Dudley v. South Jersey Metal, Inc.*, 555 F.2d 96, 99 (3d Cir.1977)). In *Pennypack*, the Third Circuit set forth factors to be considered when determining whether "exclusion of evidence is an appropriate sanction for failure to comply with discovery duties":

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order.

*In re TMI Litig.*, 193 F.3d 613, 721 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000) (citing *Pennypack,* 559 F.2d at 904-05). The Third Circuit has supplemented that list, also considering "the importance of the excluded testimony" and the party's explanation for failing to disclose. *Carmichael v. Thomson*, No. 14-cv-3323 (JBS)(AMD), 2018 WL 4629516, at *4 (D.N.J. Sept. 27, 2018), *on reconsideration in part,* No. 14-cv-3323 (JBS)(AMD), 2019 WL 1508963 (D.N.J. Apr. 5, 2019) citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997).

**WHEREAS,** the first *Pennypack* factor – prejudice and surprise – weighs heavily in favor of barring Plaintiffs' economic expert. Defendant would clearly be prejudiced without the

production of Mrs. Santiago's tax returns. It would be nearly impossible for Defendant's responsive economic expert to meaningfully respond to Verzilli's report or rebut the claim for lost wages without access to her tax records. This is particularly true given the discrepancies between Verzilli's report and the information contained in the tax transcripts that were eventually provided by Plaintiffs.

**WHEREAS,** the prejudice to Defendant cannot be eliminated by allowing more time to obtain the tax returns directly from the IRS. The parties have attempted to obtain these documents for over two years with no success. The Court attributes the lack of success to delays by Plaintiffs and Mrs. Santiago's inaccurate completion of the authorizations, such as failing to include a wet signature. The delay in and of itself creates prejudice to the parties, as the evidence in this case – filed over five years ago on May 24, 2021 – grows more and more stale. It also creates a substantial hardship on the Court, who has afforded Plaintiffs more than ample opportunity to obtain this critical information and produce it to Defendant. Indeed, the Court questions how Plaintiffs' economic expert could have possibly prepared a reliable and accurate economic damages report without having access to their tax information. Either Verzilli was provided with information that has been improperly withheld from Defendant or Verzilli's report is not based upon reliable and accurate financial data. The cost to Defendant, the delay in bringing this matter to resolution, and the weakness of Plaintiffs' proffered justification for failing to produce this critical information (various excuses that are tantamount to willful blindness) outweigh any argument in favor of further delaying this matter while the parties continue their futile efforts to obtain basic tax information that Plaintiffs should have been able to produce with relative ease. To put it plainly, Plaintiffs caused prejudice to Defendant and the Court by inexcusably ignoring their deadlines and obligations in this case for an extended period, which warrants exclusion of Verzilli's report.

**WHEREAS,** although no trial has been scheduled, this is only because the Court afforded the parties time to obtain the tax returns so Defendant's rebuttal expert report could be prepared. All other discovery is complete. Allowing Plaintiffs to continue pursuing their tax returns for an indefinite period would only serve further disrupt an already delayed case. *See Motamed v. Chubb Corp.*, No. 15-cv-7262, 2020 WL 7227252, at *4 (D.N.J. Mar. 11, 2020) (finding that introducing a supplemental expert report would disrupt the trial of a case not yet scheduled for trial because "doing so would require deadline extensions and further delays in the conclusion of expert discovery"). Notably, the Court could have barred Verzilli's report when it was first served in August 2024, *after* a deadline that had already been extended eight (8) times. It could have again barred the report after additional, repeated failures by Plaintiffs to comply with Court-Ordered deadlines. The Court cannot continue to delay this case to allow Plaintiffs to pursue fundamental documents they have been unable to produce for nearly two years without a good faith explanation.

**WHEREAS,** turning to the fourth *Pennypack* factor, the Court recognizes that exclusion of Verzilli's report "is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) (quoting *Pennypack*, 559 F.2d at 905). It is for this precise reason that the Court has afforded Plaintiffs every benefit of the doubt for over two years: allowing them to produce their expert report late, providing alternatives to obtaining the tax returns when Plaintiffs fail to produce them, and repeatedly extending the discovery deadlines while awaiting the production of the tax returns. At some point, however, the Court has done everything in its power short of sanctions, and is left with no other remedy but to bar Verzilli's report. Plaintiffs cannot rely upon an expert's report to support their claim for lost wages and then deprive Defendant the opportunity to have its expert review their tax returns in

order to prepare a rebuttal report. The result would be patently unfair to Defendant. Further, Plaintiffs' repeated and flagrant disregard of this Court's Orders and deadlines is so egregious in this case that the sanction of barring their expert report is warranted. The Third Circuit has consistently "upheld the exclusion of expert witnesses as an appropriate sanction for a party's violation of a discovery order or some other pre-trial order." *Allen v. Parkland Sch. Dist.*, 230 F. App'x 189, 194 (3d Cir. 2007) (quoting *United States v. 68.94 Acres of Land*, 918 F.2d 389, 396 (3d Cir. 1990)); *see also Konstantopoulos*, 112 F.3d at 719 (upholding the exclusion of an expert's testimony when plaintiffs' counsel flagrantly disregarded a pretrial order). Here, Plaintiffs' counsel submitted Verzilli's expert report late, then repeatedly failed to produce Mrs. Santiago's tax returns and social security records on a timely basis. When they eventually produced the records, they were incomplete or illegible, which resulted in the need for authorizations to obtain the information directly from the IRS and SSA – which were also executed incorrectly and not provided on a timely basis. Every attempt by Defendant to confer with Plaintiffs' counsel to obtain information and determine what could be done to obtain the tax records was met with inexcusable delay and neglect. Plaintiffs did not even bother to submit a written response to the Court's Order to Show Cause, and Plaintiffs' counsel appeared in Court without her clients despite a direct Order for them to be there.

**WHEREAS,** under *Pennypack*, the Court may also consider the justifications for failing to timely disclose the relevant information. *Kimmel v. Massachusetts Bay Ins. Co.*, No. 21-cv-12743 (CPO)(EAP), 2023 WL 8714336, at *10 (D.N.J. Dec. 15, 2023) (quoting *Z.F. Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 299 (3d Cir. 2012)). Plaintiffs have offered no legitimate explanation as to why it has taken nearly two years to produce their tax returns. Plaintiffs' counsel alleges that Mrs. Santiago is not proficient in English, but even a language barrier should not result in this long

of a delay. Incredibly, Plaintiffs' counsel represented that, two days prior to the Court's Order to Show Cause, a paralegal had begun assisting Mrs. Santiago in setting up an online account with the IRS to obtain her tax returns. This begs the question why this seemingly straight-forward solution was not attempted years ago. It should not take two years, an Order to Show Cause, and the threat of sanctions for Plaintiffs to comply with basic discovery obligations. Accordingly, the Court does not find any justification for Plaintiffs' failure to produce the tax returns.

**WHEREAS,** the Court next turns to the importance of the excluded testimony. *Z.F. Meritor*, 696 F.3d at 298 ("The importance of the evidence is often the most important factor." (citation omitted)). Although Plaintiffs' economic expert is vital to their lost wage claim, "the importance of the evidence alone is insufficient to overcome Rule 26." *Mercedes Benz USA LLC v. Coast Auto. Grp. Ltd.*, No. 99-cv-3121, 2008 WL 4378294, at *5 (D.N.J. Sept. 23, 2008) (excluding testimony because the four preceding *Pennypack* considerations outweighed the importance of the evidence factor, even when the testimony excluded was essential to establishing the damages element of the defendant's counterclaim), *aff'd sub nom. Mercedes-Benz USA, Inc. v. Coast Auto. Grp., Ltd.*, 362 F. App'x 332 (3d Cir. 2010); *see also Paoli*, 35 F.3d at 791-92 (citations omitted) (explaining that even "critical evidence" may be excluded as a sanction under certain circumstances). Mrs. Santiago can still testify about her lost wages; she just will not have an expert to analyze and quantify those lost wages. Further, the Court questions the importance of Verzilli's report when it could easily be discredited if it was indeed prepared without the benefit of Plaintiffs' tax returns. The Court therefore finds that Plaintiffs have not shown that the excluded evidence is of sufficient importance to outweigh the other *Pennypack* factors.

**WHEREAS,** the balance of the *Pennypack* factors weighs in favor of excluding Verzilli's testimony.

**IT IS**, on this **31st** day of **August 2026** hereby **ORDERED** as follows:

1. Plaintiffs' economic expert, Andrew Verzilli is BARRED.
2. A separate Amended Scheduling Order shall be issued to address any other issues raised during the Order to Show Cause hearing.

**SO ORDERED.**

***/s/ Stacey D. Adams***
**STACEY D. ADAMS, U.S.M.J.**

Orig: Clerk
cc: Parties
Hon. Judge Jamel K. Semper, U.S.D.J.